UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| FERNANDO BANDA | § | |
| | § | |
| Petitioner | § | |
| VS. | § | CIVIL ACTION NO. 5:10-cv-113 |
| | § | CRIMINAL ACTION NO. 5:07-cr-308 |
| | § | |
| UNITED STATES OF AMERICA | § | |

### OPINION AND ORDER DENYING FERNANDO BANDA'S
### 28 U.S.C. § 2255 MOTION

Pending before the Court is Fernando Banda's ("Banda") Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody.[1]

**I.     BACKGROUND**

On May 22, 2007, a federal grand jury in Laredo, Texas, charged Banda with alien transporting and conspiring to do the same in a five-count superseding indictment.[2] A jury trial was held on September 17-18, 2007.[3] On September 18, 2007, the jury found Banda guilty of all five counts.[4] The Court sentenced Banda to forty-six months of imprisonment and three years of supervised release on November 29, 2007.[5] The Court entered judgment on December 4, 2007.[6] Banda appealed his case to the Fifth Circuit.[7] The appeal was initially dismissed for want of prosecution, but was later reinstated.[8] The Fifth Circuit affirmed the Court's judgment on

---

[1] Dkt. No. 1. ("Dkt. No. refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. Unless stated otherwise, "Dkt. No." will be used to refer to filings in the civil case number 5:10-cv-113. "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:07-cr-308).
[2] Cr. Dkt. No. 52.
[3] Cr. Dkt. Nos. 95 & 97.
[4] Dkt. No. 102.
[5] Minute Entry 11/29/2007 & Cr. Dkt. No. 118.
[6] Cr. Dkt. No. 118.
[7] Cr. Dkt. No. 120.
[8] Cr. Dkt. Nos. 123 & 142.

October 26, 2009.[9]  Banda filed this § 2255 motion on October 12, 2010.[10]  Banda claims that he had a conflict of interest with his appellate counsel, that he received ineffective assistance of trial and appellate counsel, and that various witnesses perjured themselves at his trial.

## II.     DISCUSSION

### A.     Standard for Relief under 28 U.S.C. § 2255

"Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[11]  Generally, § 2255 claims fall under four categories: (1) challenges to the constitutionality or legality of a sentence; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.[12]  After conducting an initial examination of the petition, the Court must dismiss if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."[13]

### B.     Conflict of Interest with Appellate Counsel

Banda claims that his appellate counsel, Andres Ramos, had a conflict of interest "because he also represented co-defendant Francisco Adame."[14]  As explained below, the Court finds that there was no conflict of interest between Banda and his appellate counsel.  First, although Francisco Javier Adame ("Adame") was implicated in the same conspiracy, he was not a codefendant in Banda's case.  Second, Adame did not serve as a witness in Banda's case nor did

---

[9] Cr. Dkt. Nos. 156 & 157
[10] Dkt. No. 1.
[11] *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).
[12] 28 U.S.C. § 2255; *see United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).
[13] 28 U.S.C. § 2255, PROC. R. 4(b).
[14] Dkt. No. 1 at p. 8.

Banda serve as a witness in Adame's case. In fact, Adame pleaded guilty. Third, the timing of Adame's case and Banda's appeal indicates that there was no conflict of interest. Although, Andres Ramos represented Adame in Case No. 5:07-cr-450, the Court entered final judgment in that case on November 5, 2007.[15] Adame did not appeal his sentence or conviction. Over ten months after the Court entered final judgment in Adame's case, Andres Ramos was appointed as Banda's appellate counsel. By the time Andres Ramos began working on Banda's appeal, the factual record in Banda's case was already established. On its face, the record does not reveal a conflict. Without any explanation from Banda as to how the above facts created a conflict of interest, any finding by this Court that there was a conflict would be entirely speculative. The Court finds that Banda has failed to demonstrate that there was a conflict of interest between him and his appellate counsel.

### C.   Ineffective Assistance of Counsel

In part, Banda rests his § 2255 petition on a claim of ineffective assistance of counsel. Ineffective assistance of counsel is a violation of the Sixth Amendment right to counsel, a claim of constitutional proportion permitted under 28 U.S.C. § 2255. Under the pertinent two-prong test, Banda must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that Banda suffered prejudice as a result.[16] In assessing whether counsel was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."[17] Banda makes two claims that raise issues of ineffective assistance of counsel.

---

[15] 5:07-cr-450; Cr. Dkt. No. 105.
[16] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[17] *Id.* at 689.

**1.       Motion to Suppress**

First, Banda asserts that his trial counsel was ineffective because he failed to file a motion to suppress. Banda does not specify what evidence should have been suppressed, but he claims that he raised this issue previously on appeal.[18] After referencing Banda's appeal, the Court believes that Banda is referring to the money and the phone that were seized on the night of his arrest.[19] The Court will begin with the first prong of *Strickland* by analyzing whether it was reasonable for Banda's trial counsel to forego filing a motion to suppress the phone and the money. This necessitates an inquiry into the legality of the search itself.

The following evidence was presented at Banda's jury trial:  Around 10:00 p.m., on February 16, 2007, the Laredo Police Department received an anonymous call that there were several people going in and out of a trailer behind a restaurant.[20] Officer Guajardo responded with the apparent belief that the subjects might be burglarizing the trailer.[21] When Officer Guajardo pulled into the parking lot with his lights flashing, he "saw three subjects gathered around towards the end of the trailer."[22] As Officer Guajardo drove towards the group, they looked at him and then one took off running and another started walking away quickly.[23] Officer Guajardo followed Banda, the subject who was walking, and grabbed Banda after twice telling him to stop.[24] He then took Banda to his patrol unit to do a pat down for officer safety.[25] Meanwhile, Officer Garza arrived at the parking lot after Officer Guajardo, and was unable to observe as much as Officer Guajardo because her view was blocked.[26] Officer Garza spoke

---

[18] Dkt. No. 1 at p. 4.
[19] Motion for appellant, *United States v. Banda*, 5th Cir. No. 07-41246, Document 51690286 (March 11, 2009).
[20] 5:07-cr-308, Cr. Dkt. No. 148 at pp. 31-32
[21] *Id.* at p. 33.
[22] *Id.* at pp. 33-34.
[23] *Id.* at pp. 34 & 42-43.
[24] *Id.* at pp. 42-44.
[25] *Id.* at p. 45.
[26] *Id.* at p. 72.

briefly with a male subject who was walking around and then proceeded towards a trailer, the direction from which she had seen a subject running.[27] When Officer Garza arrived at the rear of the trailer, she shined her light through an open window of the trailer.[28] Upon shining her light through the window, she saw some people hiding behind pallets in the trailer.[29] Next, Officer Garza called dispatch to tell them to call Border Patrol because there were people in the trailer.[30] Then, Officer Garza went to help Officer Guajardo with Banda.[31] When Officer Garza reached Banda and Officer Guajardo, she told Officer Guajardo that there were people inside the trailer.[32] Together the officers handcuffed Banda.[33] The subsequent search revealed the money and the cell phone.[34]

When the officers discovered the phone and the money, they already had probable cause to search and arrest Banda based on his presence at the rear of the trailer, discovery of the people in the trailer, and the well known practice in this locale of smuggling aliens in trailers. Therefore, the Court is only concerned with the validity of the original stop by Officer Guajardo.

"[T]he Constitution forbids . . . unreasonable searches and seizures."[35] In *United States v. Jones*,[36] the Fifth Circuit explained the test for a constitutionally permissible investigatory stop.

> An officer may temporarily detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. The suspicion required to justify such a detention need not rise to the level of probable cause but must be based on more than an unparticularized suspicion or hunch. In determining whether reasonable suspicion

---

[27] *Id.* at pp. 72-75.
[28] *Id.* at p. 75; 5:07-cr-308, Cr. Dkt. No. 148-1 at pp. 1-2.
[29] 5:07-cr-308, Cr. Dkt. No. 148-1 at p. 2.
[30] *Id.* at p. 3.
[31] *Id.*
[32] Cr. Dkt. No. 148 at p. 46.
[33] *Id.* at p. 47 & Cr. Dkt. No. 148-1 at p. 3.
[34] Cr. Dkt. No. 148 at p. 47.
[35] *Terry v. Ohio*, 392 U.S. 1, 9 (1968).
[36] 234 F.3d 234 (5th Cir. 2000).

> existed to justify the defendants' continued detention, we must look at the totality of the circumstances and consider the collective knowledge and experience of the officers involved.[37]

Here, the totality of the circumstances was sufficient to support a reasonable suspicion on the part of Officer Guajardo to justify stopping Banda.

First, there was an anonymous call reporting people going in and out of a trailer. Typically, an anonymous tip, without more, will not support reasonable suspicion.[38] On the other hand, "[a]n anonymous tip can provide such reasonable suspicion, so long as it is reasonable 'in light of the totality of the circumstances.' But, crucially, an anonymous tip must 'be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.'"[39] In this case, the tip indicated that people were going in and out of the trailer. Considering the location of the trailer and the time of night, such a tip suggested that something illegal was occurring. There are few legitimate reasons for multiple individuals to be entering and exiting a trailer late at night in a restaurant parking lot. But importantly, on the night in question, Officer Guajardo was not merely relying on this anonymous tip.

Second, when the officers arrived on the scene with their lights flashing and approached the three men standing near a trailer, one subject fled when he saw the first officer. Likewise, Banda began walking away at a quick pace. "Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight— wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."[40] Although Banda did not run, he did walk away quickly; this was an apparent act of evasion under the circumstances. Furthermore, one of

---

[37] *Id.* at 241 (internal citations omitted).
[38] *See Florida v. J.L.*, 529 U.S. 272, 270-274 (2000).
[39] *United States v. Benavides*, 291 Fed. Appx. 603, 606 (5th Cir. 2008) (citing *United States v. Bolden*, 508 F.3d 204, 206 n. 2 (5th Cir. 2007); *Florida v. J.L.*, 529 U.S. 266, 272 (2000)).
[40] *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (internal citations omitted).

the other subjects actually ran away. "[T]he flight of a person standing near [him] provided further reason to support the Officer's suspicion of [Banda's] involvement."[41]

After analyzing the above factors, the Court concludes that Officer Guajardo had reasonable suspicion to stop Banda. Although no single factor was independently sufficient to justify a stop in this case, the anonymous tip, environment, and evasive behavior, when viewed together, were adequate to support reasonable suspicion. Furthermore, this investigatory stop was very brief as probable cause developed almost immediately. Accordingly, it was reasonable for Banda's attorney to not file a motion to suppress, and Banda has not demonstrated that he received ineffective assistance of counsel based on this claim.

In connection with this claim, Banda also asserts that counsel was ineffective for failing to ask for a "pretrial within 7 days (sic) picture frame. (see transcript)." While this claim is not well developed, it appears that Banda is referencing appellate counsel's position that "[c]reating a record for the claim of ineffective assistance of counsel would require appellant to file a Motion for New Trial within 7 days . . . ."[42] Appellate counsel made this argument in urging the Fifth Circuit to consider Banda's claims of ineffective assistance of counsel on direct appeal. The Fifth Circuit declined to do so.

Banda presents nothing else here to support his claim that counsel was ineffective for failing to move for a new trial. To the extent that Banda is adopting appellate counsel's arguments, the Court's finding that it was reasonable for Banda's trial attorney not to file a motion to suppress is dispositive of this claim as well.

---

[41] *United States v. Miles*, No. 00-11425, 275 F.3d 1078, 2001 WL 1465241, *3 (5th Cir. Oct. 23, 2001).
[42] Motion for appellant, *United States v. Banda*, 5th Cir. No. 07-41246, Document 51690286 (March 11, 2009).

**2.     Sufficiency of the Evidence**

Banda also claims that he received ineffective assistance of appellate counsel for failing to raise a sufficiency of the evidence claim as to the conspiracy charge.[43] Typically, a sufficiency of the evidence claim is not proper in the § 2255 context,[44] but here the Court is examining the issue through the lens of ineffective assistance of counsel. Again, the Court will begin with the first prong of *Strickland*, and analyze whether it was reasonable for Banda's counsel to not raise the sufficiency of the evidence on appeal. This necessitates an inquiry into the sufficiency of the evidence at trial.

In *United States v. Lopez*, the Fifth Circuit explained the proper approach for reviewing a case for sufficiency of the evidence.

> The narrow scope of our review for sufficiency of the evidence following a conviction is well established. We must affirm if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. We thus consider the evidence, all reasonable inferences drawn therefrom, and all credibility determinations in the light most favorable to the prosecution. Our role does not extend to weighing the evidence or assessing the credibility of witnesses. The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence. If the evidence, however, gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, we must reverse the conviction, as under these circumstances "a reasonable jury *must necessarily entertain* a reasonable doubt."[45]

In the present motion, Banda did not challenge the sufficiency of the evidence for any particular element of the conspiracy charge. Therefore, the Court must review the sufficiency of the evidence as to each element of the conspiracy.[46] The Fifth Circuit explained the elements of a conspiracy as follows.

---

[43] Dkt. No. 1 at p. 15.
[44] *See Forrester v. United States*, 456 F.2d 905, 907 (5th Cir. 1972).
[45] *United States v. Lopez*  74 F.3d 575, 577 (5th Cir. 1996) (internal citations omitted).
[46] Banda was charged with conspiracy pursuant to 8 U.S.C. § 1324. In the Court's instructions, however, the Court

8 / 12

> To support a conspiracy conviction under § 371, the government must prove three elements: (1) an agreement between two or more people to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the conspirators in furtherance of the conspiracy's objective.[47]

At Banda's trial, his codefendant, William Curtis Boston ("Boston"), testified to the following regarding the smuggling operation: Boston said he arrived in Laredo a day or two before the events of February 16, 2007.[48] Boston met with Adame and discussed smuggling a load of aliens.[49] Throughout the day of February 16, 2007, Boston was in contact with Adame.[50] Eventually, Adame told Boston to go to Sam's.[51] There Boston met an escort and followed the escort to a baseball field.[52] When Boston arrived at the field, Banda was there with a couple of aliens.[53] Boston told Banda that he needed to take the seal off the back of the truck, and someone removed it.[54] Then, the loading process began.[55] People began to arrive and Banda was directing them by pointing.[56] Banda was also using a radio for counter police surveillance.[57] After Boston noticed that they were being observed, he moved the truck to a location near a warehouse and then temporarily left the truck.[58] When Boston returned, he asked Banda where Adame was located.[59] Banda informed Boston that they were to meet Adame at Cheers.[60]

---

referenced 18 U.S.C. § 371 as well as 8 U.S.C. § 1324. While it is doubtful that 8 U.S.C. § 1324 requires proof of an overt act, (*see United States v. Lopez*, 392 Fed. Appx. 245 (5th Cir. 2010)), 18 U.S.C. § 371 does require proof of an over act. Even if the Court erred in its instructions, the error was harmless because the instruction merely held the government to a higher standard, and the jury found Banda guilty despite this higher standard.

[47] *United States v. Porter*, 542 F.3d 1088, 1092 (5th Cir. 2008) (citing 18 U.S.C. § 371).
[48] 148-2 at p. 45.
[49] *Id.* at p. 46.
[50] *Id.* at pp. 47-50.
[51] *Id.* at p. 50.
[52] *Id.*
[53] *Id.* at pp. 50-51.
[54] *Id.* at 51.
[55] *Id.*
[56] *Id.* at p. 52.
[57] *Id.*
[58] *Id.* at pp. 52-53.
[59] *Id.* at p. 54.
[60] *Id.*

When Boston and Banda arrived at Cheers, Banda told Boston that more aliens needed to come.[61] When some aliens began moving toward the truck, Boston told Banda they should change locations once again so they would not be seen.[62] Banda hesitated and stated that Adame was already on his way to Cheers.[63] While this conversation was still in progress, the police arrived.[64]

The interaction between Boston and Banda clearly reveals that there was an agreement to smuggle aliens. Banda's own actions—including counter police surveillance—demonstrate that he knew the activity was illegal. Furthermore, there is simply no legitimate reason for a trucker to transport humans in a cargo trailer. Finally, there was testimony about several overt acts in furtherance of the conspiracy. Those acts include removing the seal, loading the aliens, engaging in surveillance, and changing locations to avoid detection.

Therefore, based on Boston's testimony, the evidence was sufficient to establish each element of the conspiracy. While Banda is claiming that Boston lied at trial, the Court's ability to evaluate Boston's credibility is severely curtailed. As the Fifth Circuit stated in *United States v. Gadison*,

> [i]t is well established that a conspiracy conviction may be based upon the uncorroborated testimony of a co-conspirator, even when that testimony is from one who has made a plea bargain with the government, provided that the testimony is not incredible or otherwise insubstantial on its face. Because the jury is the ultimate arbiter of witness credibility, "[t]he test for incredibility of a witness is an extremely stringent one." To be considered incredible as a matter of law, a witness' testimony must "assert [ ] facts that the witness physically could not have observed or events that could not have occurred under the laws of nature."[65]

---

[61] *Id.* at p. 55.
[62] *Id.* at pp. 55-56.
[63] *Id.* at p. 56.
[64] *Id.*
[65] 8 F.3d 186, 190 (5th Cir. 1993)(internal citations omitted).

Here, there is no evidence that Boston's relevant testimony included matters he could not have observed. Additionally, the events related by Boston were mundane—not so fantastic that they could not have occurred under the laws of nature. Therefore, on its face, the evidence at trial was sufficient to support a conspiracy conviction and Banda has not made a sufficient showing to discredit that evidence as a matter of law.

### D.  Perjury of Witnesses

Banda alleges that the two arresting police officers committed perjury and also indicates that he believes his co-defendant lied under oath.[66] In a jury trial, the Court does not make credibility determinations about the witnesses.[67] The Court already addressed the codefendant's testimony as it relates to the sufficiency of the evidence. Yet apart from the sufficiency of the evidence, there is a due process concern when perjury is alleged. The Fifth Circuit has explained the elements of a due process violation in this context. "To obtain a reversal on the grounds that the government relied on perjured testimony, the following must be shown: (1) the contested statements were actually false, (2) the statements were material, and (3) the prosecution knew that they were false."[68] Here Banda has failed to identify the alleged perjured statement and has not even claimed that the government knew of the alleged perjury. Therefore, Banda's due process claim fails as a matter of law.[69]

---

[66] Dkt. No. 1 at pp. 7 & 10.
[67] *United States v. Allen*, 587 F.3d 246, 257 (2009) ("Witness credibility and the weight of the evidence are the exclusive province of the fact-finder.")
[68] *United States v. Blackburn*, 9 F.3d 353, 357 (5th Cir. 1993) (citing *United States v. Chagra*, 735 F.2d 870, 874 (5th Cir. 1984)).
[69] *See United States v. Webster*, 392 F.3d 787, 800-801 (5th Cir. 2004) ("As a threshold matter, [Defendant] has failed to identify even a single specific statement made by either witness that is false; instead, he offers only conclusional statements about the ultimate falsity of [Witnesses'] testimony. Moreover, even if [Defendant's] allegations of perjury are accurate, his underlying due process claim is not debatable, because he has failed even to allege that the prosecution knew that any statements made by either witness were false." (citations omitted)).

### III.     CONCLUSION

The Court has reviewed the motion, record, and controlling authorities and finds that Banda's motion is without merit.  Therefore, Banda's § 2255 motion is **DENIED**.  Should Banda seek a certificate of appealability, the same is denied.

IT IS SO ORDERED

DONE this 17th day of February, 2011, in Laredo, Texas.

                                                                        _____
                                                                         Micaela Alvarez
                                                                         UNITED STATES DISTRICT JUDGE